## No. 14,091.

## J. B. WATKINS VS. NORTH AMERICAN LAND AND TIMBER COMPANY, LIMITED.

### SYLLABUS.

1. Courts are very reluctant to interfere with the control of the affairs of a private corporation at the instance of a stockholder, or of a minority of the stockholders; but it is their right and their duty so to interfere in a proper case; and a proper case is shown where there is gross mismanagement of the business of the corporation, such as would, under the laws of the particular State in which the corporation is doing business, furnish grounds for the appointment of a receiver; or such as amounts to a clear breach of duty on the part of the managing officials of the corporation under their trust.

2. There is such mismanagement and clear breach of duty where the officers of the corporation have sold 15 per cent. in amount and vastly more than 15 per cent. in value of the assets of the corporation (all real estate) at approximately one-seventh of its value, thereby apparently entailing a loss of $2,618,000 on the corporation, and $870,000 on the complaining stockholder; and refuse or neglect to bring suit to set aside said sale, although the right to cause the sale to be set aside on the ground of lesion beyond moiety appears to be unquestionable under the laws of the State in which the property is situated.

3. The petition of a stockholder alleging such gross mismanagement, and alleging that the complainant has exhausted all available means for obtaining redress through corporate agencies, and impleading the corporation and the purchaser, and praying that the sale be set aside for lesion beyond moiety, shows a cause of action.

4. In setting forth a cause of action for annulling a sale because of lesion beyond moiety it is not necessary to allege that the complainant, or any one else, is willing to buy the property at double the amount of the price of the sale complained of. It is sufficient to allege the discrepancy between price and value. The fact of anyone being willing to buy the property at the increased appraisement is merely a fact to be considered on the merits in proof of the alleged greater value.

5. For the purposes of the trial of an exception of no cause of action, all the well pleaded allegations of fact of the petition are taken for true.

APPEAL from the Fifteenth Judicial District, Parish of Cameron. —*Miller, J.*

*Farrar ,Jones & Kruttschnitt* and *A. H. Leonard,* for Plaintiff, Appellant.

*Pujo & Moss, and Denegre, Blair & Denegre,* for Defendant, Appellee.

The opinion of the Court was delivered by

PROVOSTY, J. The plaintiff brings this suit in his capacity of stockholder in the defendant corporation to set aside, because of lesion beyond moiety, a sale made by the officers of the corporation to the co-defendant, Patillo Williams. The defendants plead no cause of action, the defendant, Patillo Williams, adding the reasons why, in his opinion, the petition fails to show a cause of action. In abbreviated form the petition is as follows:

1st. That the North American Land and Timber Company, Limited, which will hereafter, for brevity, be referred to as the "Land Company," is an English corporation, whose objects and purposes, among other things, are to acquire lands, mines, ways and water rights in the United States; to settle, improve, cultivate, sell and let such lands; to cut, convert and sell the timber thereon, and to work the mines and minerals therein and thereunder; to develop the resources of the lands and property; to carry on all of the business usually conducted by land companies in all their branches; to construct, maintain and improve, or aid in or subscribe towards the construction, maintenance and improvement of roads, streets, bridges, tramways, railways, canals, wells and other works necessary or convenient for the purposes of the company; to aid, encourage and promote immigration to the property of the company and to colonize the same, and to carry out many other objects, which, however, are not specified in the petition because not peculiarly pertinent to its subject-matter, and not necessary to be enumerated.

2nd. The petition recites the history of the capitalization of the corporation, showing that its capital to-day is $630,000, whereof complainant holds $178,000, or 28¼%.

3rd. The petition next alleges that the company in 1883 acquired, by purchase, and practically entirely from petitioner, lands in the Parish of Calcasieu, Vermilion and Cameron, to the aggregate amount of about 880,000 acres, whereof there remain, or did remain in the ownership of the Land Company on June 30th, 1901, 800,000 acres or thereabouts, and that the land so acquired has been held since the date of its acquisition in 1883 for the objects of the corporation, to be disposed of as contemplated by the charter of the association, gradually to settlers or others, at the full market value of the same.

4th. That included in the lands were 153,887 17-100 acres of land in the Parish of Cameron, which are described by township and range.

5th and 6th. That by two alleged contracts, dated respectively February 4th and February 11th, 1901, but registered March 16th, 1901, in the Parish of Cameron, the company contracted to sell to one Patillo Higgins the above real estate at the price of $3.00 per acre, whereof 5 cents per acre cash, balance on or before twelve months from date, with 8% interest from date, and copies of the two contracts are annexed to and made parts of the petition. From them it will appear that a right is granted for a further extension of time at the end of a year, if one-half the purchase price be paid.

7th. The petition next alleges a trifling and immaterial amendment in the two agreements of sale, as per document annexed to the petition.

8th. That petitioner is informed and believes that the alleged contracts and agreements were not authorized by due corporate action, or by the power of attorney granted to one Eastman, who made the sales as agent of the corporation, but that if the agreements were authorized and constitute perfected contracts of sale, they are subject to the right of the corporation to rescind the sales for lesion beyond moiety, for this: that the lands at the time when the agreements were made were worth the sum of $20.00 per acre cash, and far more, on such terms as those stipulated in and by the contracts, and that they are, to-day, worth still more than as hereinabove set forth.

9th. The petition further avers that, although the corporation is a foreign corporation, all of whose officers and directors reside in England, and although petitioner would therefore be excused from attempting to provoke corporate action before instituting this suit, still, as matter of fact, he did, on or about the 6th of February, 1901, notify the corporation, by cablegram addressed to its secretary at London, that the first described sale was disastrous; that it should not be approved, and that the land was worth many times the sum named; that the company had never vouchsafed any answer to his cablegram, but that, notwithstanding the cablegram, said Eastman, claiming to represent the corporation, entered into the second contract complained of.

10th. The bill next alleges in detail the excitement due to the discovery of oil at and near Beaumont on January 10th, 1901, and the immediate and enormous increase of values in the vicinity in consequence thereof; that the discovery of oil also attracted the liveliest attention to the necessity of shipping facilities at and along Sabine Lake and Sabine Pass, so that the lands of the Timber Company, which extended along the whole of Sabine Pass, from Sabine Lake

to the Gulf of Mexico, immediately acquired a large and increased real value and a larger speculative value for commercial purposes, as also by reason of the probable existence of oil under the same; and that the lands belonging to the company and situated in the Parish of Cameron are, where the same abut on Sabine Pass, only between twenty and thirty miles from Beaumont.

The tenth paragraph further expressly avers that the lands, entirely irrespective of their speculative value, were on and continuously after February 4th, 1901, up to date, worth $20.00 per acre in cash.

11th. The petitioner next alleges that, although he has not such knowledge as would justify him in charging actual fraud against the directors and officers of the company, yet that the acts of the directors in selling approximately 154,000 acres of land of the company, constituting more than fifteen per cent. in extent of the lands, and vastly more than fifteen per cent. in value, at the vile price and on the ridiculous terms averred, shows such gross mismanagement, waste, misuse and misapplication of the property of the corporation as to constitute a fraud in law, and as to entitle petitioner to file this petition for the benefit of the corporation, for the purpose of staying said sales, if incomplete, or of rescinding them for lesion beyond moiety, if complete.

12th. The petition further averred that Eastman, who resided at Lake Charles, Calcasieu Parish, was the agent and manager of the corporation in the State of Louisiana authorized to accept service for it; that Patillo Higgins was absent from the State and resided at Beaumont in the State of Texas.

The prayer was that the corporation and Higgins be cited; that the sales should be adjudged and decreed to have been executed without authority; but, if executed with authority, then that the court should decree them affected by, and rescinded on account of, lesion beyond moiety; and that the court should fix the just value of the real estate at the time of the contracts, and should decree that Higgins should either make up the just price of the property and pay the same at the same time provided for by the contracts and agreements, or, in default thereof, that the sales should be decreed annulled and rescinded for lesion beyond moiety, and the lands restored to the company unincumbered and unaffected by the contracts, and that in such event the price already paid by Higgins should be returned to him with interest at five per cent. per annum from date of payment until restored to him.

The contention of the defendants is that the petition exhibits nothing more than an attempt by a stockholder to control, with the aid of the court, the action of the managing agents of the corporation, representing the majority of the stockholders; and that this cannot be done in the absence of allegations of fraud, *ultra vires,* breach of trust, or gross negligence or misconduct, none of which are alleged. Citing, North American Land and Timber Co. vs. J. B. Watkins, 109 Fed. Rep., 101; IV Thompson's Com. on the Law of Corp., para. 4480, ffg.; 1 Morawetz on Private Corp. (2nd Ed.), § 203; 1 Cook on Stockholders (3rd), § 11; Low vs. Pioneer, etc., Co., 70 Fed. Rep., 646; Dudly vs. Kentucky High School, 9 Bush, 578; Gamble vs. Queen's County Water Co., 123 N. Y., 91, 99; Wisner vs. Delhi Land and Improvement Co., 46 Ann., 1223, 1230. And the contention of defendants is, further, that the allegation that the land in question is worth $20 per acre, and the allegation that the same land has been sold by the managing officers of the company at $3 per acre, when taken together, amount to this, that, in the judgment of the plaintiff, the land is worth $20, whereas, in the judgment of the agents of the company, it is worth $3, and that the suit is practically an attempt to substitute the judgment of the plaintiff for that of the agents of the defendant company; and the contention of the defendants is, further, that, apart from the value of the lands, there is involved in the matter a question of policy— whether, considering the large holdings of the defendant, it was not good policy to sell, even at a vile price, and whether, even if the lesion were conceded, it would not be bad policy on the part of the defendant to repudiate one of its own sales, considering that its business is to traffic in lands, and that it has large holdings yet undisposed of; and defendants contend that the policy of a corporation as to whether to bring suit to set aside a contract entered into by it, cannot be controlled by the courts at the suit of a stockholder or of a minority of the stockholders.

As one of the reasons why he contends that the petition fails to show a cause of action, the defendant, Patillo Williams, in his pleadings, calls attention to the fact that the petition does not allege that the plaintiff, or any third person, is willing to buy the land at twice the amount of the price of the sale. If by this is meant that such an allegation is necessary to support an action to set aside a sale for lesion beyond moiety, the contention is without merit. The action for lesion beyond moiety is statutory, and the statute regulating it

prescribes no such requisite. The statute in question is embodied in Articles 2589, 2590, 2591 and 1870, Civil Code, as follows:

"ART. 2589. If the vendor has been aggrieved for more than half the value of an immovable estate by him sold, he has the right to demand the rescission of the sale, even in case he had expressly abandoned the right of claiming such rescission and declared that he gave to the purchaser the surplus of the thing's value.

"ART. 2590. To ascertain whether there is lesion beyond moiety, the immovable must be estimated according to the state in which it was, and the value which it had at the time of the sale.

"ART. 2591. If it should appear that the immovable estate had been sold for less than one-half its just value, the purchaser may either restore the thing and take back the price which he has paid, or make up the just price and keep the thing."

"ART. 1870. When lesion is alleged to invalidate a partition or sale, the party alleging it must first prove the value of the property sold, in the state in which it was at the time of the contract, according to the usual terms of credit given on sales of property of that description. He must then show how much the price given was less than such value; but, if the price given was paid at longer periods than those usually given on such sales, the interest for the time exceeding such usual credit must be deducted from such price; or, if the price was paid in shorter periods than those of such usual credit, then the interest for the time such payment has fallen short of the usual credit shall be added to the price actually paid; and from a comparison of the price after these additions or deductions with the estimated value, the court shall determine whether, according to law applied to the circumstances of the case, there is a lesion sufficient to invalidate the contract."

But, from the tenor of the argument, both oral and printed, we understand the insistence of defendants to be, not so much that such allegation is necessary to support an action for lesion beyond moiety, as that it is necessary to justify the court in entertaining the appeal of plaintiff for interference in the affairs of the corporation; in other words, that such an allegation is necessary to make out a case on the face of the petition justifying the court in interfering with the affairs of the corporation at the instance of a stockholder. Even for the latter purpose we do not think such an allegation was requisite. The fact of any one being willing to buy the land at the increased price is

merely a fact in the case to be considered on the merits in proof of the greater value of the land.

Since the case is presented on exception of no cause of action, for the determination of which every well-pleaded allegation of fact of the petition must be taken for true, we can lend no weight to the arguments of defendants—however plausible—going to show that the alleged greater value of the land is mere matter of opinion on the part of plaintiff, and is in all probability not true. Under the pleadings, we have to assume that plaintiff will prove on the trial every allegation of his petition; and, such being the case, the matter before us for consideration is whether, where the officials of a corporation have sold fifteen per cent. in amount and "vastly more than fifteen per cent. in value" of the assets of the corporation at approximately one-seventh of its value, thereby apparently entailing a loss of $2,618,000.00 on the corporation, and $870,000.00 on the complainant, such assets being all real estate, a cause of action is, or not, shown for interference by the courts with the affairs of a private corporation at the prayer of a stockholder.

The reluctance of courts to interfere at the instance of a stockholder, or of a minority of the stockholders, with the affairs of a private corporation is very pronounced; but their right and their duty so to interfere in a proper case is indubitable, and the question recurring in every case is whether the particular case is a proper one for interference.

Mr. Thompson, in his work on Corporations, 4th Thompson on Corporations, Sec. 4487, states the law on this subject as follows:

"SEC. 4487. *Equity will not interfere on questions of corporate management or policy.* Other decisions emphasize the principle that courts of equity cannot undertake the management of all the private corporations in the country; that, in the absence of usurpation, of fraud, or of gross negligence, they will not interfere, but will allow the majority to rule, and leave dissatisfied stockholders to redress their grievances through ordinary corporate methods. The governing principle has been clearly outlined by Vice-Chancellor Green in the following manner: 'Individual stockholders cannot question, in judicial proceedings, the corporate acts of directors, if the same are within the powers of the corporation, and in the furtherance of its purposes, are not unlawful or against good morals, and are done in good faith and in the exercise of an honest judgment. Questions of policy, of man-

agement, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of lawful appropriation of corporate funds to advance corporate interests, are left solely to the honest decision of the directors, if their powers are without limitation and free from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation.' According to the reasoning of another court, the acts of the officers of the corporation which do not violate the constitution or charter of the company will not be controlled by any court at the instance of a stockholder, unless it is shown to have been a wilful *abuse* of their *discretion,* or the result of *bad faith,* or of a *wilful neglect* or breach of a known duty. Upon this subject it has also been said by Peckham, J.: 'To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests. Otherwise the court might be called upon to balance probabilities of profitable results to arise from the carrying out of the one or the other of different plans proposed by or on behalf of different shareholders in a corporation, and to decree the adoption of that line of policy which seemed to it to promise the best results, or at least to enjoin the carrying out of the opposite policy. This is no business for any court to follow.' "

In the instant case, always assuming the existence of the wide discrepancy between the price of the sale and the real value of the property, there is, in our opinion, exhibited a case necessitating the interference of the courts, and justifying the allegation contained in the 11th paragraph of the petition, namely, that, although the petitioner "has not such knowledge as would justify him in charging actual fraud against the directors and officers of the company, yet that the acts of the directors in selling approximately 154,000 acres of land of the company; constituting more than fifteen per cent. in extent of the lands and vastly more than fifteen per cent. in value, at the vile

price and on the ridiculous terms averred, shows such gross misman-
agement, waste, misuse and misapplication of the property of the cor-
poration as to constitute a fraud in law, and as to entitle petitioner
to file this petition for the benefit of the corporation, for the purpose
of staying said sales, if incomplete, or of rescinding them for lesion
beyond moiety, if complete."

If this discrepancy really exists between price and real value, the
refusal or neglect to bring a suit to avoid the sale cannot be accounted
for by mere business judgment and policy; the discrepancy is too great
and the resulting loss too great. Such a sale and such refusal or
neglect to take advantage of the plain provisions of our statute to
avoid it constitute, in our opinion, mismanagement of the affairs of
the corporation such as would justify the appointment of a receiver
under Section 1 of Act 159 of 1898, paragraph 2, which provides for
the appointment of a receiver "at the instance of a stockholder or
creditor, when the directors or other officers of the corporation are
jeopardizing the rights of stockholders or creditors by grossly mis-
managing the business or by committing acts *ultra vires,* or by wasting,
misusing or misapplying the property or funds of the corporation."
If the appointment of a receiver is justified, *a fortiori* is the milder
remedy of a suit like the present one. In the case of Marcuse vs.
Gullett Gin Mfg. Co., 52 Ann., p. 1394, this court intimated its opinion
of the propriety of bringing such a suit rather than resorting to the
harsher remedy of the appointment of a receiver. It said:

"Precisely why the beneficial legal results for the corporation which
the plaintiff declares he is seeking to obtain, and to which he might be
entitled, could not be as fully and completely worked out by himself,
as a stockholder, through proper proceedings taken contradictorily
with all parties in interest, we cannot see."

If such discrepancy exists, the bounden duty of the managers of the
corporation, in the discharge of their trust, is to bring suit to annul
the sale. Except that such duty is dependent for its proof on facts,
instead of mere naked law, it is not to be differentiated from the duty
to resist the payment of a tax, a breach of which duty has been recog-
nized by the Federal Supreme Court, presumably the highest authority
on such a question, as affording clear ground for interefernce by the
courts at the instance of a stockholder. Dodge vs. Woolsey, 18 How.,
331; Pollock vs. Farmers' Loan and Trust Co., 157 U. S., 429; S. C.,
158; U. S., 601; Smyth vs. Ames, 169 U. S., 466.

In conclusion, we will say that there are some features of the case which, while strictly not entering into the legal problem of cause of action *vel non*, yet are worthy of mention. These are that the managing agents of the corporation all reside in a foreign country and are presumably more or less dependent upon a local agent for information as to the value of the property in question; and, to quote the language of the brief of plaintiff, "this is not a suit brought by the holder of a trifling minority of the stock of the corporation, nor a suit brought by a small holder in order to vex and harass the management of the company; that it is a suit wherein the plaintiff, even if defeated, would be entitled to very nearly $130,000 of the proceeds of sale of these lands, and that his interest, if his own views be correct, amounts to very nearly $1,000,000; that the plaintiff comes before the court after exercising the utmost diligence to prevent the wrongs of which he complains; that his first complaint was made to the corporation, and made between the dates of the two sales, so that he tried to prevent the corporate action even before it took place, and he cannot for a moment be accused of sleeping on his rights; and that he endeavored to obtain relief through corporate agencies to the best of his ability before resorting to the court."

The whole case, in our opinion, hinges upon whether the allegations of value in the petition must be taken for true. If they are, there is made out a clear case where officers of a corporation prefer to entail enormous loss on the corporation rather than bring an action which they have a clear right to bring.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed; that the exceptions filed by the defendants be overruled; that the defendants be ordered to answer, and that this case be remanded to the lower court for further proceedings according to law; the defendants to pay the costs of this appeal other costs to abide the decision of the suit.