**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 98-30215

---

MARY JEAN ATKINS; WALTER CALDWELL, III; LINDA ATKINS PERRY; JOSEPH ALLAN POGUE, on behalf of Jack P. Pogue Succession, Sr.; THOMAS HENRY POGUE, on behalf of Jack P. Pogue Succession, Sr., Co-Administrator,

Plaintiffs-Appellants,

VERSUS

HIBERNIA CORPORATION, JOHN HERBERT BOYDSTUN, ROBERT P. McLEOD, RONALD L. DAVIS, JR., PATRICK L. SPENCER, MALCOLM MADDOX, DELMA CARTER, and DAVE N. NORRIS,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

July 22, 1999

Before EMILIO M. GARZA, DeMOSS and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The Plaintiffs Mary Jean Atkins, Walter Caldwell III, Linda Atkins Perry, Joseph Allan Pogue, and Thomas Henry Pogue appeal from an order granting partial summary judgment for the Defendants, Hibernia Corporation, Robert P. McLeod, Patrick L. Spencer, Malcolm

1

Maddox, Delma Carter, Dave N. Norris, John Herbert Boydstun and Ronald L. Davis Jr. (collectively "Hibernia"), and from the dismissal of the Plaintiffs' remaining claims.  We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In 1987, Defendant Boydstun, along with Walter Silmon and Will Pratt, formed and served as the directors of a bank holding company, First Bancorp of Louisiana, Inc. ("Bancorp"), which set out to purchase First National Bank of West Monroe, Louisiana ("FNB").  Boydstun personally owned some FNB stock and Bancorp borrowed over $6 million from AmSouth Bank to purchase more of the stock.  Before making the loan, AmSouth required an injection of $1 million of capital into Bancorp.  In order to satisfy that loan condition, Bancorp borrowed $1 million from Silmon in exchange for ten convertible debentures earning 10% interest a year.

Later, the relationship between Boydstun and Silmon soured and Boydstun offered to buy the debentures but Silmon refused to sell. Boydstun advised Silmon that the debentures would be retired if he did not convert them by August 31, 1992.  Silmon then agreed and the debentures were retired.

Contemporaneously with the retirement of the Silmon debentures in August 1992, Bancorp's current directors, Boydstun, Robert McLeod, Ronald L. Davis, Jr. and Dave Norris voted to issue $850,000 in new debentures, at 10% interest. Boydstun, McLeod, and Davis (directors of Bancorp), Patrick Spencer (CFO of FNB), Malcolm

2

Maddox (President of FNB), and Delma Carter (director emeritus) purchased the replacement debentures.[1] Boydstun, McLeod, Maddox and Spencer also increased their stock holding through other purchases between August 1992 and May 1993.

In May 1993, it was announced that Boydstun was negotiating to sell Bancorp. In November 1993, Boydstun wrote to the shareholders to announce that Hibernia had offered to buy Bancorp. In July 1994, Boydstun sent a letter and Prospectus to the shareholders, announcing a special shareholder meeting during which the shareholders would vote on the proposed merger between Bancorp and Hibernia. Walter Caldwell, III attended the July 1994 shareholder meeting and raised questions about the 1992 debentures, expressing his concern that they would dilute the other stockholders' positions and arguing that the defendants had breached their fiduciary duties in issuing them. Thereafter, the stockholders, including Caldwell and the other plaintiffs, voted to approve the merger.

On the eve of the merger, the defendants converted their debentures into shares of Bancorp stock. The actual purchase price was not affected, and the value of one share of Bancorp stock on the date of closing was $155.67, slightly higher than the $151.50

---

[1]J.W. Robertson, another director emeritus, also purchased replacement debentures. Robertson died on March 24, 1994. Thereafter, his debentures were redeemed by Bancorp for their face value plus accrued interest. Robertson was not named as a defendant in this suit.

3

estimated in the original communication to stockholders.

Caldwell continued to pursue his complaint, writing to the Bancorp Board of Directors and to Hibernia. Hibernia investigated and reported that it had found no wrongdoing. The Plaintiffs then filed the instant action. Hibernia retained attorneys from an outside law firm and appointed a Special Litigation Committee ("SLC") that investigated the claims and recommended dismissal of the litigation as not in the best interest of Hibernia.

The district court dismissed the Plaintiffs' federal causes of action brought pursuant to Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and the Securities Exchange Act, 18 U.S.C. §§ 78j(b) and 78t-1, with prejudice for failure to state a claim on which relief could be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court later granted summary judgment for defendants on the Plaintiffs' remaining claims based on alleged breaches of fiduciary duty.

## II. DISCUSSION

### A. Standard of Review

We review the grant of summary judgment *de novo*. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F..3d 489, 494 (5th Cir. 1996). Likewise, we review a Rule 12(b)(6) dismissal independently, applying the same standards employed by the district court. *See Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).

4

## B. Direct or Derivative Action?

The Plaintiffs' complaint asserted both a stockholder's derivative action on behalf of Hibernia and a class action "on behalf of all persons, other than the defendants, who owned stock of First Bancorp . . . at the time that Bancorp merged with Hibernia," alleging that the defendants breached their fiduciary duty "to the bank and its shareholders." The district court found that the gravamen of the Plaintiffs' claim is that the individual defendants' alleged acts of self-dealing diluted the value of each share of Bancorp stock. This, the district court held, is a wrong suffered by the corporation which can only be enforced derivatively, citing *Lawly Brooke Burns Trust v. RKR, Inc.*, 691 So.2d 1349 (La. App. 1 Cir. 1997) and *Nowling v. Aero Services International, Inc.*, 752 F. Supp. 1304 (E.D.La. 1990).

Louisiana's state law determines whether, and in what manner, a shareholder may assert an action based on a corporate officer's or director's breach of a fiduciary duty. *See Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347, 349 (5th Cir. 1987). The Plaintiffs correctly set out the test recognized in Louisiana jurisprudence: "It is established that where the breach of fiduciary duty causes loss to a corporation itself, the suit must be brought as a derivative or secondary actions. However . . . where the breach of a fiduciary duty causes loss to a shareholder personally . . . the shareholder may sue individually to recover

his loss." *Palowsky v. Premier Bancorp, Inc.,* 597 So.2d 543, 545 (La.App. 1 Cir. 1992).

The Plaintiffs contend that the district court erred in failing to distinguish between a decrease in the value of stock due to a decrease in the overall value of a corporation and a decrease in the value of stock due to a dilution of a shareholder's interest in a corporation. They argue that they suffered a 12.49% decline in their stock in a single day when the debentures were converted to new shares of stock, for which they have a right of direct action. On the other hand, they argue, Bancorp (and Hibernia, as Bancorp's successor in interest) suffered no injury and therefore has no right of action.[2]

The facts alleged do not support this argument. The Plaintiffs' shares were worth approximately $155 prior to the redemption of the debentures. This figure was derived by calculating the assets of Bancorp and subtracting its debts, including the principle and interest on the debentures. Subsequent to the debenture redemption, the Plaintiffs' shares were worth approximately $157 per share. Bancorp had the same assets, but had exchanged a portion of its debt for newly issued stock. The

---

[2]The issuance of new stock may also dilute a stockholder's control, which has been characterized as a right enforceable by direct rather than derivative action. *See* Glenn Morris, *Shareholder Derivative Suits: Louisiana Law*, 56 LA. L. REV. 583, 587 (1986). The Plaintiffs, however, posit a claim for diminished stock value not for diminished control.

6

Plaintiffs' argument that their stock would have been worth $178.21 per share had the stock not been issued has no basis in the allegations in their own pleadings, as it ignores the fact that the debentures represented debt for the 1992 infusion of $850,000 into the holding company. Their remaining arguments, that it was unwise to incur the debt and that the interest rate on the debentures was higher than market value, allege injuries to the corporation and must be pursued in a derivative action.

The district court held,

> The plaintiffs have not alleged the type of harm that a shareholder can claim individually, that is, they have not averred that the alleged injury to their stock is distinct from the injury suffered by other shareholders, nor have they shown that their injury is separable from their stock ownership in Bancorp. Therefore, under the terms of their complaint, the plaintiffs have no standing, either personally or as representatives of all of Bancorp's former shareholders, to pursue individual actions against the defendants.

The district court's holding is correct. The Plaintiff's complaint is correctly categorized as a derivative action.

## C. Business Judgment Rule

Louisiana's business judgment rule provides that as long as directors of a corporation decide matters rationally, honestly, and without a disabling conflict of interest, the decision will not be reviewed by the courts. *Bordelon v. Cochrane*, 533 So.2d 82 (La.App. 3 Cir. 1988). In the instant case, Hibernia filed a motion to dismiss, contending:

> Since the filing of this litigation, the board of

7

directors of Hibernia Corporation appointed a special litigation committee to examine the advisability of pursuing the plaintiffs' derivative fiduciary claims. With the help of special counsel . . . and following an exhaustive review of pleadings, documents and interviews with counsel and witnesses, the committee recommended against continuing the derivative action as without a basis and too costly. The Hibernia board, without participation by interested parties, accepted the Committee's recommendation and voted against pursuing this action on behalf of the corporation.

Whether Hibernia, the true party in interest, is entitled to dismissal under these circumstances is a matter of first impression in Louisiana. *See* Morris, *Shareholder Derivative Suits: Louisiana Law*, 56 LA. L.REV. at 633 ("Louisiana has yet to address, directly, the powers of management-appointed litigation committees in [shareholder derivative actions]").

Because derivative suits provide a means for stockholders to police outlaw directors, a body of jurisprudence has developed limiting corporations' freedom to seek dismissal of such suits. The district court, after a thorough survey of the various incarnations of the rule, concluded that, without exception, the cases have held that after demand has been made and refused,[3] a decision by the board of directors (or a committee thereof) of the corporate-defendant to seek dismissal of a derivative action brought on its behalf should be accorded by the courts the same

---

[3]The line of cases fashioning an appropriate role for the court when a plaintiff has brought suit without first making demand on the corporation is inapposite here because the Plaintiffs properly made demand that defendants refused. *See, e.g., Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 & n.10 (Del. 1981).

deference as other management decisions. *See Auerbach v. Bennett*, 47 N.Y.2d 619 (N.Y. 1979); *Aronson v. Lewis*, 473 A.2d 805 (Del. 1983).

The Plaintiffs argue that their allegations of self dealing against the Bancorp insiders make this case inappropriate for business judgment deference. They cite *Watkins v. North American Land & Timber Co.*, 31 So. 683 (La. 1902), in which the Louisiana Supreme Court reversed a decision of a lower court dismissing a suit under a business judgment theory and stated that Louisiana authorizes court involvement in allegations of fraud, willful breach of a known duty, gross mismanagement, and waste. *See also Hirsch v. Cahn Elec. Co.*, Inc., 694 So.2d 636, 643 (La. App. 2 Cir. 1997)(the court will not interfere with normal business decisions "unless it is manifestly evident that interference is necessary in the interest of the corporation and its stockholders, and it must appear that there is capricious, arbitrary, or discriminatory management"). The Plaintiffs submit that the court, and not the Hibernia board, should be the arbiter of the fairness of the transactions because their suit alleges self dealing and breach of fiduciary duty. We are unpersuaded by this contention, as was the district court. The Louisiana decisions in which a court declined to defer to the board each involved a dispute over the management of a closely-held corporation in which all of the shareholders were present as parties. *See id.* (claim of excess compensation brought

9

by shareholder holding 49.502 percent of the stock against shareholder who held remainder of the company); *Donaldson v. Universal Engineering of Maplewood, Inc.*, 606 So. 2d 980 (La. App. 3 Cir. 1992)(all eleven shareholders in the subject corporation were included as parties in the action); *Spruiell v. Ludwig*, 586 So. 2d 133 (La. App. 5 Cir. 1990)(family dispute, involving claims between two family groups which together owned the closely-held corporation in its entirety); *Dunbar v. Williams*, 554 So. 2d 56 (La. App. 4 Cir. 1988)(same).

The Louisiana jurisprudence invoked by the Plaintiffs does not involve derivative actions against large, publicly-held corporations. Our best *Eire*[4] guess concerning what the Louisiana Supreme Court will do when faced with such a question, is that Louisiana will follow the majority of jurisdictions which have considered the issue. That is, it will defer to the management of large, publicly-traded corporations, so long as the board, or its chosen representatives "possess a disinterested independence and do not stand in a dual relation which prevents an unprejudiced exercise of judgment." *Auerbach v. Bennett*, 47 N.Y.2d at 631. As Professor Morris explained:

> Faced with the unappealing choice between different types of conflicted corporate representation, the leading national authorities have essentially decided to side with management, at least in the case of publicly-traded corporations. Management, after all, is elected by

---

[4]*See Eire Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

10

shareholders, faces market-based incentives to enhance overall corporate values, and lacks any interest in generating legal expenses for their own sake. The strike suit lawyer is not elected by those he purports to represent, has no financial interest in enhancing the value of the corporation as a whole, and actually has an interest in maximizing legal expenses that he will be able to inflict upon the corporation. The decision by the national authorities to adopt rules that favor the defense in most derivative suits suggests that these authorities are more distrustful of the plaintiff's lawyers than of corporate management, and that they are skeptical of the value of derivative suits in the context of publicly-traded corporations.

Morris, *supra*, at 618.

Therefore, because the Plaintiffs have not established a genuine issue of material fact concerning the disinterestedness of Hibernia's board or its special litigation committee, we affirm the district court's grant of summary judgment for defendants.

In a related argument, the Plaintiffs contend that the burden is on the defendant-fiduciaries not only to prove the good faith of the transactions, but also to show their inherent fairness from the viewpoint of the corporation and the shareholders. Because, we do not look behind the disinterestedness of Hibernia in seeking dismissal of the suit, we do not reach this question.

## D. Securities Violations and RICO Claims

The Plaintiffs appeal the district court's dismissal for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), of their securities violations and mail fraud claims.

The Plaintiffs allege that the Bancorp directors violated

11

securities laws by committing fraud on the corporation and on its stockholders in failing to make adequate disclosure concerning the issuance and conversion of the debentures. *See Alabama Farm Bureau Mut. Cas. Co. v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 611 (5th Cir. 1979)(Failure to make adequate disclosure of self-dealing acts as a deceit or works as a fraud on a corporation.) The district court dismissed the securities fraud allegations because the Plaintiffs failed to allege a material misrepresentation or omission. We agree. The Prospectus disclosed all the information material to the alleged self dealing. It named those directors who owned replacement debentures, stated that holders of the debentures had the right to acquire additional shares through their conversion, indicated that all of the outstanding debentures would be converted into Bancorp shares prior to the close of the sale to Hibernia and gave a clear example of the effect that such conversion would have on the overall exchange price. Further, Caldwell discussed his concern over the dilution of stock, gleaned from the Prospectus that he now complains was unclear, at the shareholder meeting. The Plaintiffs failed to state a securities violation because they have failed to allege a material misrepresentation or omission.

The Plaintiffs next appeal the dismissal of their RICO claims. The district court held that the Plaintiffs had alleged no predicate acts which could serve as the basis of a pattern of

12

racketeering activity.  As discussed above, the Plaintiffs alleged no securities fraud.  Likewise, they have failed to allege predicate acts of mail fraud.

The mail fraud statute, 18 U.S.C. § 1341, prohibits the use of the United States mails in furthering or executing a scheme to defraud.  *See Armco Indus. Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475 (5th Cir. 1986).  The Plaintiffs' RICO case statement identifies a series of mailings which included, *inter alia,* the annual shareholder reports, a letter to shareholders concerning Hibernia's offer and the Prospectus of July 7, 1994.  The Plaintiffs contend that these communications failed to disclose the issuance and conversion of the debentures and the director's plans to sell Bancorp.  All of the information that the Plaintiffs contend was omitted was in fact revealed in the very series of mailings they identify.  The Plaintiffs' mail fraud claims are without merit.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's orders granting summary judgment for defendants and dismissing the remaining claims for failure to state a claim on which relief could be granted.

AFFIRMED.