# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 27, 2008

Charles R. Fulbruge III
Clerk

No. 07-30151

AUGUST ROBIN; ROBERT PIPER; CASSANDRA PIPER; WENDELL PIPER

Planitiffs-Appellants

v.

JACK B BINION; HORSESHOE ENTERTAINMENT; HORSESHOE GAMING HOLDING CORP; NEW GAMING CAPITAL PARTNERSHIP

Defendants-Appellees

Consolidated With
Case No. 07-30156

AUGUST ROBIN

Plaintiff-Appellant

v.

JACK B BINION; HORSESHOE ENTERTAINMENT; HORSESHOE GAMING HOLDING CORP; NEW GAMING CAPITAL PARTNERSHIP

Defendants-Appellees

Consolidated With
Case No. 07-30159

ROBERT PIPER; CASSANDRA PIPER; WENDELL PIPER

Plaintiffs-Appellants

v.

JACK B BINION; HORSESHOE ENTERTAINMENT; HORSESHOE GAMING HOLDING CORP; NEW GAMING CAPITAL PARTNERSHIP

Defendants-Appellees

---

Appeals from the United States District Court
for the Western District of Louisiana

---

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellants August Robin, Robert Piper, Cassandra Piper, and Wendell Piper appeal the district court's grant of summary judgment in favor of Appellee Jack Binion, the general partner of Horseshoe Entertainment, LP ("Horseshoe Entertainment"). We AFFIRM.

I.

In April 1993, Horseshoe Entertainment was formed to operate the Horseshoe Casino in Bossier City, Louisiana. The general partner–owning an 89% interest–was New Gaming Capital Partnership ("NGCP"). Jack Binion held a controlling interest in NGCP. The limited partners of Horseshoe Entertainment were Appellants: August Robin (3%), Wendell Piper (0.5%), Cassandra Piper (4.58%), and Frank Pernici (2.92%).[1] Appellant Robert Piper, the husband of Cassandra, claims standing by virtue of the marital community.

In 1995, Binion reorganized his various casino holdings and reached a merger agreement with another casino operator. The terms of their agreement required Binion to buy out Robin and the Pipers before May 31, 1999, or the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Pernici sold his interest and is not a party to this case.

merger would be cancelled, and Binion would forfeit a $10 million deposit. Accordingly, Binion approached Robin and the Pipers about selling their limited partnership interests in Horseshoe Entertainment.

On April 21, 1999, Robin and the Pipers signed separate agreements with Binion and the affiliated Horseshoe entities to sell their limited partnership interests (the "Buyout Agreements"). The Buyout Agreements contained a participation clause providing that:

> If, within five years of the date of this Agreement, the Binion Family Interests collectively sells in excess of a 50% interest in Horseshoe Gaming, LLC, for a purchase price consisting of cash, debt or publicly traded securities or any combination thereof having a value of in excess of $5,350,000 per 1% interest sold, then [the Pipers and Robin] shall receive in the aggregate, a cash sum equal to 2¼% of the value of the sale in excess of $5,350,000 per 1% interest sold (such cash sum equal to 2¼% being the "Participation Payment").

(emphasis added). The Buyout Agreements also included a release and waiver provision, providing that each Appellant: "hereby release[s], discharge[s] and waive[s] any and all claims, causes of action, and demands of any kind or nature whatsoever that now exist, whether known or unknown, which he may have against [Appellees] . . . ." In exchange for this provision, the Pipers and Robin were each paid $500,000. However, the Louisiana Gaming Control Board (the "Board") never officially approved the Buyout Agreements.

In 1999, the various Horseshoe entities were reorganized into a Delaware corporation–Horseshoe Gaming Holding Corporation ("Holding Corp."). On September 10, 2003, Holding Corp. entered into a Stock Purchase Agreement with Harrah's Entertainment, Inc. ("Harrah's"). Section 1.2 of the Stock Purchase Agreement provided that: "[T]he purchase and sale of [Holding Corp.'s] Shares (the 'Closing') shall take place . . . on the third business day after the satisfaction or . . . waiver of the conditions set forth in Article VII," which included approval by the relevant government authorities.

Around September 2003, Binion told Robert Piper, "that [the sale to Harrah's] will trigger the [participation] clause, and I will pay you your money." However, the Federal Trade Commission did not approve the deal until early June 2004. Because this was more than five years after the execution of the Buyout Agreements (April 21, 1999), Binion determined that the participation clause of the Buyout Agreements was no longer effective and refused to pay the Pipers or Robin.

Appellants filed suit in Louisiana state court, alleging fraud and breach of fiduciary duties, rescission, misrepresentation, detrimental reliance, and statutory deceptive trade practices. The case was removed to federal court based on diversity jurisdiction. Appellees moved for summary judgment, and the district court granted summary judgment on all of Appellants' claims, except for the Pipers' claim for revocation of "comp privileges."[2] The court also ruled in favor of Horseshoe Entertainment on a counterclaim it asserted against Robin for a $550,000 debt. Appellants timely appealed.

II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Atkins v. Hibernia Corp., 182 F.3d 320, 323 (5th Cir. 1999).

III.

A. The Pipers' Claims

The Pipers argue that the district court erred in finding that: (1) the Buyout Agreement's release and waiver provision barred the fraud and breach of fiduciary duty claims; (2) the fraud and breach of fiduciary duty claims fail on the merits; (3) the Pipers and Binion did not establish an oral contract to buy out

---

[2] The district court granted the Pipers' "Motion to Dismiss Comp Claim with a Reservation of Right to Pursue Appeal of Dismissed Claims." Thus, this appeal is brought pursuant to a final judgment.

the participation clause; and (4) the Buyout Agreements were enforceable despite Binion's failure to obtain official approval from the Board.

The Pipers' arguments lack merit. First, given the broad language of the release and waiver provision–as well as the substantial monetary consideration paid–the provision remains in effect and bars the Pipers' fraud and breach of fiduciary duty claims. See Ingram Corp. v. Jay Ray McDermott & Co., 698 F.2d 1295, 1312 (5th Cir. 1983) ("When a release provides that 'any and all claims,' 'past, present, or future' are to be extinguished, a court is required to enforce its provisions both as to known and unknown claims."). Second, the Pipers fail to establish that Binion breached any fiduciary duties during the Buyout Agreement negotiations. Thus, even if the Pipers' claims were not barred, they fail on the merits. Third, Louisiana law requires a witness to prove the existence of an oral contract.[3] The Pipers do not fulfill this requirement because the only witness they present–Binion–disavows the existence of said oral contract. Fourth, regarding rescission of the Buyout Agreements, the Pipers and the Board consistently acted as if the agreements were valid, and, therefore, we agree with the district court's disposition of the Pipers' claims.

B. The Stock Purchase Agreement Did Not Trigger the Participation Clause

Both Robin and the Pipers argue that the district court erred in finding that the Stock Purchase Agreement with Harrah's did not trigger the participation clause of the Buyout Agreements. The district court found that: (1) the participation clause requires an actual completed sale; (2) the Stock Purchase Agreement was a contract to sell, not a contract of sale; and (3) the sale occurred outside of the participation clause's five-year window. We agree with

---

[3] LA. CIV. CODE ANN. art. 1846 provides that "[i]f the price or value is in excess of five hundred dollars," an oral contract "must be proved by at least one witness and other corroborating circumstances."

the district court's analysis. We find that the participation clause was not triggered because the sale to Harrah's occurred after the five-year period.

C. Counterclaim Against Robin

Finally, we agree with the district court that Horseshoe Entertainment prevails on its $550,000 counterclaim against Robin. There is no need to vacate the judgment.

IV.

Accordingly, the judgment of the district court is AFFIRMED.